[Cite as *State v. Marion*, 2022-Ohio-2480.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2022 CA 0002 |
| PAMELA D. MARION | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No. 2020 CR 0133


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      July 18, 2022


APPEARANCES:

For Plaintiff-Appellee

BENJAMIN E. HALL
ASSISTANT PROSECUTOR
318 Chestnut Street
Coshocton, Ohio 43812

For Defendant-Appellant

TODD W. BARSTOW
261 West Johnstown Road
Suite 204
Columbus, Ohio 43230

*Wise, J.*

**{¶1}** Appellant appeals her conviction and sentence on one count of Aggravated Vehicular Homicide and one count of OVI, entered on December 22, 2021, in the Coshocton Court of Common Pleas, following pleas of no contest.

**{¶2}** Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶3}** The relevant facts and procedural history are as follows:

**{¶4}** On August 24, 2020, Appellant Pamela Marion was operating a motor vehicle on State Route 16 in Coshocton County. At approximately 2:54 p.m., she went left of center and collided head-on with another vehicle operated by Robert Jacobs. Deputy Johnson of the Coshocton County Sheriff's department responded to the scene along with paramedics. Mr. Jacobs was killed in the collision.

**{¶5}** Appellant was injured and taken to Genesis Hospital in Zanesville, Ohio. While at Genesis Hospital, she had her blood and urine collected as part of her treatment. Appellant was treated for her injuries and released the following day.

**{¶6}** Appellant was too badly injured at the scene for Deputy Johnson to request that she perform any field sobriety tests or submit to breath-alcohol testing.

**{¶7}** On August 26, 2020, Deputy Johnson requested that his supervisor, Lieutenant Hardway, submit a subpoena to Genesis Hospital pursuant to R.C. §2317.02(B)(2)(a) and R.C. §2317.022. Specifically, he requested test results that would show the presence of prohibited substances or alcohol in Appellant's blood or urine.

**{¶8}** On August 31, Deputy Johnson drove to Genesis Hospital and personally obtained the subpoenaed blood and urine screens. The urine screen, collected by a

catheter, showed the presence of amphetamines, marijuana/THC, and fentanyl. Dep. Johnson was able to confirm that the fentanyl was provided during Appellant's treatment.

{¶9} By August 31, 2020, Appellant's blood and urine had been destroyed by the hospital in accordance with its internal policy.

{¶10} On September 23, 2020, Lieutenant Hardway applied for a search warrant from Coshocton County Municipal Court Judge Timothy France. The search warrant application directed that Genesis Hospital provide "any and all medical records for the admission beginning 8/24/20 .... and subsequent treatment at Genesis Hospital .... for Pamela D. Marion."

{¶11} Judge France issued the search warrant that day.

{¶12} Subsequently, Genesis Hospital provided the records requested, including the urine toxicology screen obtained from the subpoena issued in August.

{¶13} On October 16, 2020, Appellant was indicted by the Coshocton County Grand Jury on four counts: Count One - Aggravated Vehicular Homicide with the predicate OVI being (A)(1)(a), under the influence, in violation of R.C. §2903.06(A)(1)(a), a second-degree felony; Count Two - Aggravated Vehicular Homicide with the predicate OVI being (A)(1)(G)(i), over the per se limit of Amphetamines in whole blood, in violation of R.C. §2903.06(A)(1)(a), a second-degree felony; Count Three – OVI, in violation of R.C. §4511.19(A)(1)(a), a first-degree misdemeanor; and, Count Four – OVI, in violation of R.C. §4511.19 (A)(1)G)(i), a first-degree misdemeanor.

{¶14} On April 6, 2021 Appellant filed a Motion to Determine Competency.

{¶15} On May 12, 2021, a competency hearing was held.

**{¶16}** By Judgment Entry filed May 18, 2021, the trial court found Appellant competent to stand trial.

**{¶17}** On August 18, 2021, Appellant filed a "Motion to Suppress or in the Alternative to Exclude" the "Genesis Health Care System presumptive toxicology screening results dated August 24, 2020" of Appellant.

**{¶18}** A hearing on the Motion to Suppress was scheduled for September 15, 2021.

**{¶19}** On August 31, 2021, Appellee filed a Response to Motion to Suppress or in the Alternative to Exclude.

**{¶20}** The parties entered into the following written stipulations for purposes of the Suppression Hearing:

1. Admission of the following exhibits: (1) Subpoena for medical records dated 8/28/20; (2) Search Warrant dated 9/23/20; (3) Search Warrant Return dated 9/23/20; (4) Genesis Medical Records of Appellant; (5) Certificate of Accreditation for Genesis Hospital lab effective February 9, 2019 through February 8, 2021 (CLIA accreditation); and (6) Certificate of Accreditation for Genesis Hospital for pathology.

2. The vehicle crash that resulted in Robert C. Jacob's death occurred on August 24, 2020 which occurred in Coshocton County Ohio; and

3. As a result of the crash, Defendant was taken to Genesis Hospital in Zanesville, Ohio on August 24, 2020; and

4. That deputy Chris Johnson was the primary investigating officer of the Coshocton County Sheriff's Department; and

5. Deputy Johnson requested a subpoena be issued for Defendant's Medical records at Genesis hospital from the road patrol Lieutenant J.D. Hardway of the Coshocton County Sheriff's Department on August 26, 2020. Lieutenant Hardway was responsible for getting the subpoena issued and served on Genesis Hospital. The subpoena is State's exhibit 1 and was issued pursuant to R.C. 2317.022; and

6. On August 28, 2020 State's Exhibit 1 was executed and served on Genesis Hospital; and

7. On August 31, 2020 Deputy Johnson received Appellant's medical records from Genesis Hospital which is State's exhibit 4; and

8. On September 23, 2020 a search warrant application was prepared and the Search Warrant was granted for Defendant's medical records at Genesis Hospital, state's Exhibit 4; and

9. The Search Warrant return is dated September 23, 2020, State's exhibit 3.

10. Genesis Hospital and its Laboratory is a Healthcare Provider as defined in R.C. 2317.022; and

11. Genesis Hospital and its Laboratory is Accredited.

{¶21} At the suppression hearing both parties presented testimony and evidence as to the propriety of the search warrant

**{¶22}** Ultimately the trial court found probable cause for the issuance of the search warrant that resulted in the State obtaining Genesis Healthcare records of Appellant.

**{¶23}** The trial court also heard testimony from Pam Perone who testified as to the records submitted in response to the subpoena. Ms. Perone testified she was employed by Genesis Hospital in Zanesville, Ohio, as the laboratory manager which oversees hematology, chemistry, transfusion service, microbiology, and pathology, to encompass histology and cytology. (Supp. T. at 25-27). She oversees toxicology which includes testing urine for drugs. *Id.* at 27. Ms. Perone testified that the lab is certified by Clinical Laboratory Improvement Amendments (CLIA). *Id.* The laboratory is also accredited by the College of American Pathologists (CAP). *Id.* at 29. The two accreditations concern quality control standards. Ms. Perone testified that State's exhibit 4 were the Genesis health records for Appellant. The records showed that Appellant was positive for Amphetamines. This screen was done by urine which is the preferred method for toxicology. *Id.* at 30. The hospital discards tested urine after four (4) days and since it was collected on the 24th it was discarded on the 27th or 28th. *Id.* at 31. Ms. Perone testified that the emergency department will collect the urine and send it to the lab for testing, and that medical decisions are being made based on the results of the screen. *Id.* Ms. Perone testified that laboratory results influence more than 80 percent of all care plans put together for patients. *Id.* at 31. Urine is poured into an aliquot tube and introduced to the chemistry instrument. *Id.* at 32. Each analyte (i.e. barbiturate, amphetamine, THC, etc.) has a different threshold for a positive test. *Id.* The lab generates a qualitative result, not quantitative. *Id.* The lab test shows whether something is present or not present in the urine. *Id.* at 33. For Amphetamines, the cut off for a positive

result is 1,000 nanograms per milliliter. *Id.* This threshold (twice the legal limit) gives the instrument the most accurate results. When the threshold for the instrument is set at 1,000 nanograms per milliliter, there is a 90% confidence that is correlated with the more specific gas chromatography method. *Id.* at 34. Gas chromatography is a "quantitative" method, not qualitative. *Id.* at 35. The gas chromatography would further show under the umbrella of Amphetamines which of the different components it is, such as methamphetamines. *Id.* at 43. This is what would be shown if the sample was sent off to a "reference lab". *Id.* at 43. Ms. Perone testified that proficiency surveys are provided by the College of American Pathologists which test the accuracy rate of the results. This is done three times a year. *Id.* at 46. It's a blind test that's sent out. The accuracy rate for this Genesis lab for the past two quarters was 99-plus percent, which included the time Appellant's test was performed. *Id.* at 46.

{¶24} By Judgment Entry filed September 30, 2021, the trial court denied the Motion to Suppress and or Motion to Exclude.

{¶25} On November 22, 2021, Appellant entered a No Contest plea to Counts One and Three: Aggravated Vehicular Homicide and OVI.

{¶26} On December 20, 2021, a sentencing hearing was held. The trial court sentenced Appellant to a mandatory indefinite sentence with a mandatory minimum of six (6) years and a maximum term of nine (9) years for Count One. Appellant was given two hundred thirty-four (234) days of jail credit.

{¶27} Appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶28}** "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HER MOTION TO SUPPRESS/MOTION TO EXCLUDE EVIDENCE.

**{¶29}** "II. THE TRIAL COURT SENTENCED APPELLANT TO INDEFINITE TERMS OF INCARCERATION PURSUANT TO A STATUTORY SCHEME THAT VIOLATES APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS."

I.

**{¶30}** In her first Assignment of Error, Appellant argues that the trial court erred when it denied her motion to suppress. We disagree.

**{¶31}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See Williams, supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). As the United States Supreme

Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

**{¶32}** When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *See State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

**{¶33}** In this case, Appellant argues the trial court incorrectly decided the ultimate or final issues raised in her motion to suppress.

**{¶34}** The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

**{¶35}** In determining the sufficiency of probable cause in an affidavit submitted for a search warrant, a trial judge or magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph one of the syllabus (1980), *citing Illinois v. Gates*, 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As a reviewing court, we must accord great deference to the issuing judge's determination of probable cause. *See George*, at paragraph two of the syllabus. Doubtful or marginal

cases should be resolved in favor of upholding the warrant. *Id.* The totality of the circumstances must be examined in determining whether probable cause existed for a search warrant. *Illinois v. Gates, supra.* "Probable cause" means only the probability and not a *prima facie* showing of criminal activity. *George, supra*, at 644. *See, also, Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

{¶36} Here, the Affidavit in support of the Search Warrant read as follows:

THAT I am Lt. J.D. Hardway a certified peace officer in the State of Ohio since 2000 and am currently the Road Patrol Supervisor at the Coshocton County Sheriff's Office, Coshocton, Ohio;

THAT on August 24, 2020 at approximately 2:54 pm a traffic crash was reported on State Route 16 west of State Route 83 in Coshocton County, State of Ohio;

THAT as a result of the crash Robert C. Jacobs was found deceased in his vehicle off of the north side of the roadway and that Pamela D. Marion was found with serious injuries inside of her vehicle still on the traveled portion of State Route 16;

THAT the investigation to include physical evidence and witness statements show that the Marion vehicle crossed the centerline and striking the Jacobs vehicle head-on;

THAT Marion was transported to Genesis Healthcare System Emergency Department in Zanesville, Ohio with serious injuries;

THAT Genesis Healthcare System is in possession of medical records pertinent to the investigation into the cause of the crash;

THAT I am requesting a Search Warrant to obtain these records from Genesis Healthcare System, 2951 Maple Ave., Zanesville, Ohio 43701. The listed crime being investigated is "Vehicular Homicide", a "misdemeanor" of the "first degree" in violation of "O.R.C. 2903.06".

{¶37} Revised Code §2903.06 states:

(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:

(1) (a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance; (b) As the proximate result of committing a violation of division (A) of section 1547.11 of the Revised Code or of a substantially equivalent municipal ordinance; (c) As the proximate result of committing a violation of division (A)(3) of section 4561.15 of the Revised Code of a substantially equivalent municipal ordinance.

(2) In one of the following ways: (a) Recklessly; (b) As the proximate result of committing, while operating or participating in the operation of a motor vehicle or motorcycle in a construction zone, a reckless operation offense, provided that this division applies only if the person whose death is caused or whose pregnancy is unlawfully terminated is in the construction zone at the time of the offender's commission of the reckless operation

offense in the construction zone and does not apply as described in division (F) of this section.

(3) In one of the following ways:

(a) Negligently;

(b) As the proximate result of committing, while operating or participating in the operation of a motor vehicle or motorcycle in a construction zone, a speeding offense, provided that this division applies only if the person whose death is caused or whose pregnancy is unlawfully terminated is in the construction zone at the time of the offender's commission of the speeding offense in the construction zone and does not apply as described in division (F) of this section.

(4) As the proximate result of committing a violation of any provision of any section contained in Title XL V of the Revised Code that is a minor misdemeanor or of a municipal ordinance that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any provision of any section contained in Title XL V of the Revised Code that is a minor misdemeanor.

**{¶38}** When oral testimony is not offered in support of a search-warrant affidavit, the magistrate determines the sufficiency by "evaluating only [the facts alleged within] the four corners of the affidavit and [applying] an objective reasonableness standard." *United States v. Richards,* 659 F.3d 527, 559 (6th Cir.2011), fn. 11 (Moore, J., concurring in judgment only), citing *United States v. Weaver,* 99 F.3d 1372, 1378 (6th Cir.1996). On appeal, " 'the reviewing court is concerned exclusively with the statements contained

within the affidavit itself.' " *Id.*, quoting *Weaver* at 1378. Courts have held that affiants may make reasonable inferences within search-warrant affidavits.

**{¶39}** Based upon the information provided within the four corners of the affidavit, we find a substantial basis for the finding of probable cause to issue the warrant in this case.

**{¶40}** Here, the police were investigating a fatal automobile accident caused by Appellant. The accident occurred at approximately 3:00 o'clock in the afternoon when Appellant went left of center, hitting Mr. Jacobs's automobile head-on and killing him. Negligence is one of the elements listed in the Aggravated Vehicular Homicide statute. Appellant's medical condition at the time of the accident, be it whether she was having a medical emergency or was under the influence of drugs and/or alcohol, is relevant to whether Appellant was negligent in the operation of her vehicle when the accident occurred. We find that such requests as to her condition and/or any statements she may have made are relevant as such could indicate culpability.

**{¶41}** The trial court also denied Appellant's motion to exclude the medical records pursuant to Evid.R. 403(A), claiming that the information provided was more prejudicial than probative.

**{¶42}** Specifically, Appellant argues that the urine test results are presumptive and should be confirmed by a reference laboratory. Appellant has not argued that the testing was not in compliance with the Ohio Administrative Code or Ohio Department of Health regulations.

**{¶43}** Initially, we note that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d

343 (1987). Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶44} Here, we find Pam Perone testified that Appellant's urine screen was positive for marijuana, amphetamines and fentanyl. She further testified as to the testing procedure, the meaning of the test results, and the accuracy of the results. She stated that accuracy rate for this Genesis lab for the past two quarters was greater than 99 percent.

{¶45} We further find that R.C. §4511.19(D)(1) was amended April 7, 2007, adding a section (a). R.C. §4511.19(D)(1)(a) states:

> In any criminal prosecution or juvenile court proceeding for a violation of division (A)(1)(a) of this section or for an equivalent offense that is vehicle-related, the result of any test of any blood or urine withdrawn and analyzed at any health care provider, as defined in section 2317.02 of the Revised Code, may be admitted with expert testimony to be considered with any other relevant and competent evidence in determining the guilt or innocence of the defendant.

{¶46} *See also State v. Davenport,* 12th Dist. No. CA208-01-011, 2009-Ohio-557, wherein the Twelfth District held that a trial court has discretion to admit test results of any blood draw as contemplated in R.C. §4511.19(D)(1)(a).

{¶47} Based on the foregoing, we find that the trial court did nor err in denying Appellant's motion to exclude Appellant's medical records.

{¶48} Appellant's first assignment of error is overruled.

## II.

{¶49} In her second assignment of error, Appellant challenges the presumptive release feature of R.C. §2967.271, arguing it violates her constitutional rights to trial by jury and due process of law, and further violates the constitutional requirement of separation of powers.

{¶50} For the reasons stated in the dissenting opinion of The Honorable W. Scott Gwin in *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501, 2020 WL 7054428, we find the Reagan Tokes Law does not violate Appellant's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers. We hereby adopt the dissenting opinion in *Wolfe* as the opinion of this Court. In so holding, we also note the sentencing law has been found constitutional by the Second, Third, and Twelfth Districts, and also by the Eighth District sitting *en banc*. *See, e.g., State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153, 2020 WL 4919694; *State v. Hacker*, 3rd Dist., 2020-Ohio-5048, 161 N.E.3d 112; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, 2020 WL 4279793; *State v. Delvallie*, 8th Dist., 2022-Ohio-470, 185 N.E.3d 536.

{¶51} Appellant's second assignment of error is overruled.

{¶52} For the foregoing reasons, the judgment of the Court of Common Pleas, Coshocton County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

JWW/kw 0708